OPINION
These appeals are taken from multiple judgments of the Domestic Relations Division of the Portage County Court of Common Pleas. The parties, Francis D. Mekker and Sandra L. Mekker, both appeal from judgments rendered by the trial court in their divorce proceedings.[1]
Francis and Sandra Mekker were married in Aurora, Ohio on June 27, 1981. One male child was born as issue of the marriage in 1982. Following a lengthy marriage, Sandra filed a complaint for divorce on June 20, 1997. As grounds for the divorce, Sandra alleged gross neglect of duty, extreme cruelty, and incompatibility. Francis filed an answer and counterclaim for divorce.
The matter was immediately referred to a magistrate for a pretrial hearing on the issues of temporary custody and child and spousal support pendente lite. During this hearing, the parties submitted evidence to the magistrate regarding their respective incomes and monthly expenses.
On July 1, 1997, the magistrate issued his decision. The magistrate ordered that Sandra be designated as the temporary residential parent of the child and that Francis pay $545.61 per month in temporary child support. He arrived at this figure by completing a child support worksheet. Beyond this, the magistrate ordered Francis to pay $500 per month in temporary spousal support plus poundage, a monthly mortgage payment of $467.50, and a monthly home equity loan payment of $135.
Francis filed objections to the temporary orders of the magistrate. The crux of Francis' objections was that the magistrate had ordered him to pay more than he could afford. The trial court overruled the objections by judgment entry on July 21, 1997.
The matter came on for trial on November 17, 1997. Francis and Sandra both took the witness stand during this proceeding. Francis testified that he earned approximately $50,000 per year as a supervisor at a machinery shop. He also provided information regarding his monthly living expenses since the separation. Sandra testified that she worked part-time at a grocery store earning $7 per hour while attending school to learn how to be a court reporter. Prior to this, Sandra had not been employed during the course of the marriage since approximately 1989. The parties agreed that they were no longer compatible.
On January 13, 1998, the trial court issued a judgment entry granting the parties a divorce on the basis of incompatibility. In the divorce decree, the trial court named Sandra as the primary residential parent and ordered Francis to pay $535 per month plus poundage in child support. The trial court further mandated that Francis pay $500 per month plus poundage in spousal support given the duration of the marriage and the relative disparities in the parties' incomes.
Beyond these matters of support, the trial court also divided the marital estate accumulated by the parties. As part of the property division, the trial court noted that the fair market value of the marital residence was $76,000 subject to a primary home mortgage balance of $47,000 and a home equity loan of $7,500. The trial court decreed that Sandra could remain in the house during the 1998 calendar year while she completed her associate's degree in court reporting. Francis was responsible for paying the home mortgage payment of $467.50 and home equity loan payment of $135 on a monthly basis during this interval. By January 1, 1999, however, Sandra was required to vacate the house. At that time, Francis had the option of either purchasing Sandra's one-half interest in the property, or the residence would be sold with the net proceeds divided between the parties as decreed.
On February 3, 1998, Francis filed a notice of appeal from the divorce decree which was captioned as 98-P-0006. He filed another notice of appeal the following day which was designated as 98-P-0007. This second appeal was taken from the trial court's July 21, 1997 judgment entry in which the court overruled the objections to the magistrate's temporary child and spousal support orders. The two appeals were consolidated sua sponte by this court.
On February 9, 1998, Francis filed a motion with this court asking us to remand the matter for the purpose of allowing the trial court to determine whether it meant to order Sandra to pay rent on the marital residence in 1998. We overruled the motion on the ground that the alleged oversight by the trial court should have been addressed prior to an appeal being taken.
Francis then filed his brief with respect to the consolidated appeals in 98-P-0006 and 98-P-0007. He asserted a lone assignment of error:
 "The Trial Court erred to the prejudice of Appellant-Defendant, Francis D. Mekker and hereinafter referred to as `Husband,' by ordering Husband to pay Appellee-Plaintiff, Sandra L. Mekker and hereinafter referred to as `Wife,' either directly or indirectly, One Thousand Six Hundred Fifty-Eight and 11/100 Dollars ($1,658.11) per month and representing both temporary and `permanent' child and spousal support." (Emphasis sic.)
Following the submission of his brief, Francis filed a motion for relief from judgment in the trial court pursuant to Civ.R. 60(B). In this motion, Francis requested the trial court to correct the January 13, 1998 divorce decree by ordering Sandra to pay fair market rental value for living in the marital residence during 1998. Since Francis' consolidated appeals were already pending before this court, the trial court was without jurisdiction to rule on the Civ.R. 60(B) motion.
Recognizing this, Francis filed a motion with this court asking us to remand the matter to the trial court for the sole purpose of adjudicating the Civ.R. 60(B) motion. We granted the motion by judgment entry on July 1, 1998.
On remand, the trial court conducted a hearing on the motion for relief from judgment. At the conclusion of the hearing, the trial court indicated that Francis' Civ.R. 60(B) motion was well-taken because the court had intended to order Sandra to pay rent while living in the house in order to offset the monthly mortgage payments that Francis was paying in 1998. As a result, the trial court issued a judgment entry on August 31, 1998 in which it ordered that Francis would receive $5,124 from Sandra's share of the proceeds from the sale of the house, regardless of whether Francis exercised the option to buy his former wife's one-half interest or whether the residence was sold to a third party.
The $5,124 was computed by multiplying $427 by the twelve months that Sandra was to reside in the marital residence from January through December 1998. The $427 figure represented the monthly fair market rental value of the house less the average monthly reduction in the home mortgage loan principal anticipated during 1998.
From this judgment, Sandra filed a timely notice of appeal which was designated as 98-P-0100. This appeal was consolidatedsua sponte by this court with Francis' prior appeals in 98-P-0006 and 98-P-0007. In 98-P-0100, Sandra set forth the following assignment of error:
 "The trial court erred as a matter of law and abused its discretion in ordering the Appellee to pay the Appellant $450.00 — $50.00 x 12 months per month as rent for the marital residence."[2]
Before proceeding to an analysis of the assigned errors, we wish to address a procedural matter. In 98-P-0007, Francis appeals from the trial court's July 21, 1997 judgment entry overruling his objections to the temporary child and spousal support orders issued by the magistrate. Francis filed this appeal on February 4, 1998. Pursuant to App.R. 4, the appeal in 98-P-0007 was late because it was not filed within thirty days of the entry of the trial court's judgment from which the appeal was taken. For this reason, the appeal in 98-P-0007 should be dismissed.
Moreover, in filing the appeal in 98-P-0007, Francis was attempting to challenge the magistrate's temporary child and spousal support orders as adopted by the trial court. These interlocutory orders were provisional in nature and were subject to modification at any time. Accordingly, the magistrate's orders as approved by the trial court were not immediately appealable.Kelm v. Kelm (1994), 93 Ohio App.3d 686, 689 (holding that temporary child and spousal support orders are not final appealable orders); DiLacqua v. DiLacqua (1993), 88 Ohio App.3d 48,56-57. In other words, even if Francis had filed an appeal within thirty days of the trial court's July 21, 1997 judgment entry, such an appeal would have been dismissed for lack of a final appealable order as defined by R.C. 2505.02.
This does not mean, however, that Francis had no recourse for appealing the amounts of temporary child and spousal support ordered by the magistrate and adopted by the trial court. "[C]laimed prejudicial error with respect to an interlocutory order may be reviewed on appeal after a judgment, decree, or final order is entered in the case in which the interlocutory order was entered." (Footnote omitted) Whiteside, Ohio Appellate Practice (2000), Section 2.20, at 51. See, also, DiLacqua,88 Ohio App.3d at 57. Consequently, temporary support orders, like other interlocutory orders, are reviewable after the entry of a final decree disposing of the overall action in which they were entered. Applying this principle to the instant matter, the appeal in 98-P-0007 was unnecessarily filed. Francis could have simply assigned the temporary support orders as error in his appeal taken from the final divorce decree (i.e., the appeal in 98-P-0006).
Again, however, the appeal in 98-P-0007 must be dismissed. The twofold reason for the dismissal is as follows: (1) it was tardily filed pursuant to App.R. 4; and (2) it was taken from the trial court's July 21, 1997 judgment entry, which was not a final appealable order.
We turn now to the remaining appeals. In 98-P-0006, Francis asserts that the trial court abused its discretion when it ordered him to pay $1,658.11 in monthly support to Sandra. This figure represented the sum of monthly child support ($545.61 including poundage), monthly spousal support ($510 including poundage), the monthly home mortgage payment ($467.50), and the monthly home equity loan payment ($135). These numerical figures as incorporated into the divorce decree by the trial court were essentially identical to the pretrial orders of the magistrate.
According to Francis, the trial court abused its discretion by ordering him to pay monthly support of $1,658.11. The crux of Francis' argument is that the $1,658.11 exceeds his net monthly income as reduced by his monthly living expenses. Francis bases this position on the financial data that he listed on a "temporary order information sheet" that was submitted to the magistrate. On this form, Francis claimed a net monthly income of approximately $2,360 and monthly living expenses of about $830. When $2,360 is reduced by $830, this ostensibly leaves a balance of $1,530 available to Francis, which in turn is less than the monthly support order of $1,658.11.
As an initial matter, it would appear that this argument is moot in light of the modification made to the divorce decree by the trial court when granting Francis' Civ.R. 60(B) motion. As described previously, the trial court issued a judgment entry on August 31, 1998 in which it granted the Civ.R. 60(B) motion by ordering that Sandra pay $427 in monthly rent for residing in the marital residence from January through December 1998. This effectively offset a large percentage of the home mortgage payment that Francis had previously been ordered to pay by the trial court.
Again, it is worth repeating that Francis filed his brief with this court in 98-P-0006 before he even submitted the Civ.R. 60(B) motion for the trial court's consideration. Thus, the argumentation contained in that brief is essentially outdated. The $1,658.11 figure cited by Francis does not take into account the subsequent modification of the divorce decree, whereby the trial court essentially shifted $427 of the home mortgage burden to Sandra by ordering that her equitable interest in the house effectively be reduced by the rent obligation of $5,124 which accrued while she lived in the house during 1998.
Moreover, we would also note that Francis' citation of $2,360 in net monthly income as listed on the pretrial information sheet is circumspect. Notwithstanding the information submitted by Francis to the magistrate, there was evidence introduced during the November 17, 1997 trial to suggest that he had a higher annual income than he claimed. Indeed, Francis' W-2 form for the 1996 tax year reflected a gross income of over $70,000, and there was evidence that Francis grossed over $54,000 from January 1998 through October 1998.
The trial court, therefore, did not abuse its discretion by ordering Francis to pay $1,658.11 as reflected by the monthly child and spousal support orders, the monthly home mortgage payment, and the monthly home equity loan payment. This amount was within the means afforded Francis by his earnings.
Thus, Francis' assignment of error is not well-founded for two reasons: (1) the argument is outdated given the trial court's subsequent ruling on his Civ.R. 60(B) motion; and (2) the $1,658.11 did not constitute an abuse of discretion based on the evidence adduced during the course of the November 17, 1997 trial on the divorce complaint.
We turn now to the appeal instituted by Sandra from the August 31, 1998 judgment issued by the trial court. In that entry, the trial court modified the divorce decree by awarding Francis $5,124 of Sandra's share of the proceeds derived from the sale of the marital residence. This figure represented a monthly rent of $427 multiplied by the twelve months that Sandra was permitted to remain in the house while finishing her schooling. In her lone assignment of error, Sandra now posits that the trial court abused its discretion by ordering her to pay the rent obligation of $5,124 which accrued while she resided in the marital residence during 1998.
The trial court ordered Sandra to pay rent on the marital residence upon granting Francis' Civ.R. 60(B) motion. Civ.R. 60(B) enumerates several grounds upon which relief from final judgments and orders may be granted. It provides in pertinent part:
 "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken."
In order to prevail on a motion brought under Civ.R. 60(B), the moving party must demonstrate the following: (1) the movant has a meritorious defense or claim to present if relief is granted; (2) the movant is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds for relief are Civ.R. 60(B)(1), (2), or (3), not more than one year after the judgment, order, or proceeding was entered or taken. GTEAutomatic Electric v. ARC Industries (1976), 47 Ohio St.2d 146, paragraph two of the syllabus.
The decision whether to grant a Civ.R. 60(B) motion rests within the sound discretion of the trial court. Griffey v. Rajan
(1987), 33 Ohio St.3d 75, 77; Ursetti v. Omlin (Dec. 11, 1998), Lake App. No. 97-L-287, unreported, at 6, 1998 WL 964550; Taaffev. Taaffe (Dec. 26, 1997), Trumbull App. No. 96-T-5616, unreported, at 3, 1997 WL 799501. The trial court's ruling will not be disturbed on appeal absent a clear showing of abuse of discretion. Griffey, 33 Ohio St.3d at 77; Moore v. EmmanuelFamily Training Ctr. (1985), 18 Ohio St.3d 64, 66. An abuse of discretion connotes more than a mere error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
In the case sub judice, the trial court addressed the issue of the marital residence in the divorce decree issued on January 13, 1998. Pursuant to the language of the decree, Francis had two alternatives come January 1, 1999:
 "1. Wife shall be permitted to remain in the marital residence until January 1, 1999 (three months after she finishes her reporting school). Husband may purchase Wife's interest in the marital residence at this time.
 "The fair market value of the marital residence is established at $76,000 with a mortgage of $47,000 and a second mortgage of $7,500. Wife's interest is $76,000 less $47,000 less $7[,]500, divided by two, leaving her an equity of $10,750.
 "Should Husband exercise this option, he shall hold Wife harmless on the first and second mortgage and shall be responsible for payment on the mortgages until sale.
 "Should Husband elect not to purchase Wife's interest in the marital residence, the residence shall be sold and the net proceeds divided equally between the parties save that Husband shall be entitled to any reduction of the principal from the time of filing of this Decree."
The trial court undoubtedly had the authority to dispose of the house as a marital asset. Upon granting a divorce, the trial court is charged with the duty of classifying, valuing, and distributing all property of the parties, including both marital and separate property. R.C. 3105.17.1. With regard to those assets comprising the marital estate, the trial court is required to divide and distribute such property between the parties in an equitable manner. R.C. 3105.17.1(B);Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 130. The trial court is necessarily vested with wide discretion in formulating an equitable distribution of marital property. Holcomb, 44 Ohio St.3d at 130; Berish v.Berish (1982), 69 Ohio St.2d 318, 319. Such discretion is broad, but not unlimited. Bisker v. Bisker (1994),69 Ohio St.3d 608, 609. The trial court's division of marital property will not be disturbed on appeal unless the court abused its discretion. Booth v. Booth (1989),44 Ohio St.3d 142, 144; Martin v. Martin (1985), 18 Ohio St.3d 292,294.
In the case at bar, neither party challenged the trial court's disposition of the marital residence as an abuse of discretion. Instead, Francis filed a Civ.R. 60(B) motion requesting that the trial court review the divorce decree to determine whether it had mistakenly forgotten to order Sandra to pay monthly rent in exchange for being allowed to reside in the marital residence during 1998.
The trial court held a hearing on the Civ.R. 60(B) motion. At the conclusion of the hearing, the trial court explained to the parties that it had ordered Francis to make the home mortgage payments because he was afforded the opportunity to keep the house by buying out Sandra's share of the equity in January 1999. The trial court also indicated that it had intended to offset the financial burden imposed on Francis via the home mortgage payments by ordering Sandra to pay monthly rent while she lived in the residence during 1998. In granting the Civ.R. 60(B) motion, the trial court noted in its judgment entry:
 "After a review of the file, the trial notes and the transcript, the Court finds that a mistake was made. The Court ordered that Husband be responsible for the mortgage payments on the residence because he was eventually to be awarded the property. The notes show, however, that Wife was to be responsible for the fair rental value of the residence during her occupancy."
Based upon its stated reasoning, the trial court had intended to order Sandra to pay "the fair rental value" as part of the original divorce decree, but inadvertently omitted language to that effect from the judgment entry. After Francis drew the trial court's attention to the matter by filing the motion for relief from judgment, the court was within its discretion to modify the divorce decree on the grounds of mistake under Civ.R. 60(B)(1) or other reason justifying relief from the judgment pursuant to Civ.R. 60(B)(5).
Upon review, therefore, we do not believe that the trial court abused its discretion by granting the Civ.R. 60(B) motion. It seems eminently reasonable for the trial court to have ordered that Sandra's equitable interest in the house be reduced by the rent obligation of $5,124 which accrued while she lived in the marital residence during 1998. After all, the trial court could have decreed that the house be sold immediately upon the divorce being granted in January 1998 and the proceeds thereafter distributed equally. The trial court, however, chose to allow Sandra to continue occupying the house through December 31, 1998 while she finished school. It was not an abuse of discretion for the trial court subsequently to order Sandra to pay rent in exchange for living in the house during 1998 as a way of partially offsetting the $602.50 ($467.50 plus $135) that was imposed on Francis through the monthly home mortgage and equity loan payments during a year in which he was not occupying the residence.
When modifying the divorce decree, the trial court ordered that Francis would receive $5,124 in rent from Sandra's share of the sale proceeds as calculated at a monthly rate of $427 over twelve months. Francis was to receive this money, regardless of whether he exercised his option to purchase the house or whether the residence was sold to a third party.
In light of this modification to the divorce decree, Sandra maintains that Francis would be entitled to double compensation if he elected not to exercise his purchase option and the house was sold to a third party, to wit: (1) he would receive full credit for the 1998 mortgage payments through a reduction of Sandra's share of the sale proceeds; and (2) he would also be entitled to $5,124 in rental payments from Sandra's portion of the proceeds. By contrast, if Francis opted to retain the marital residence by purchasing Sandra's equity therein, he would simply receive the $5,124 in rent.
We disagree with Sandra's "double compensation" argument. Contrary to her assertion, Francis would not be entitled to full credit for the entire amount of the 1998 mortgage payments. In the original divorce decree, the trial court ordered that the parties would split the sale proceeds equally if the house was sold to a third party, except that Francis would be "entitled to any reduction of the principal from the time of filing of this Decree." Thus, pursuant to the judgment entry of divorce, Francis was to be given credit only for the "reduction of the principal" if he did not exercise his option to purchase Sandra's share of the equity.
A large percentage of the $467.50 monthly home mortgage payment that Francis was obligated to pay represented interest on the loan, as opposed to principal. Simply stated, Francis was only entitled to an offset for the amount by which the home mortgage loan principal decreased during 1998 pursuant to the terms of the original divorce decree. He was not to be credited with the entire amount of 1998 mortgage payments.
Moreover, we note again that the trial court ordered Sandra to pay $427 in monthly rent. The $427 figure did not represent the true monthly fair market rental value of the house. Rather, the trial court arrived at that number by reducing the actual monthly fair market rental value by the anticipated 1998 average monthly reduction in the home mortgage loan principal.
In the wake of the trial court's decision to order Sandra to pay rent while living in the marital residence during 1998, Francis would receive $5,124 from Sandra's share of the sale proceeds as calculated at a monthly rental rate of $427 over twelve months. The $427 figure was a "discounted" monthly fair market rental value because it was reduced by the average monthly reduction in the home mortgage loan principal anticipated in 1998.
If Francis exercised his option to purchase Sandra's share of the equity in the house, then he would only receive $5,124 in rent. Francis would not be entitled to an additional credit because he would already be receiving the benefit of the increased equity accrued by way of his payment of the 1998 home mortgage loan installments.
If Francis did not exercise his option to purchase Sandra's equitable interest in the marital residence, then the house would be sold to a third party. Under this scenario, Francis would receive $5,124 in rent from Sandra's share of the sale proceeds. Beyond this, he would be entitled to the reduction in the home mortgage loan principal pursuant to the terms of the original divorce decree. Francis would garner this additional offset from the sale proceeds because Sandra was not really paying the actual monthly fair market rental value while living in the house during 1998. The $427 in monthly rent was "discounted" by the average monthly reduction in the home mortgage loan principal anticipated in 1998. Thus, Francis would be entitled to $5,124 in rent plus the additional credit for "the reduction of the principal" (i.e., the increased equity) realized by virtue of the fact Francis paid the home mortgage payments during 1998 while Sandra was living in the residence.
Ergo, the trial court did not double compensate Francis by modifying the original divorce decree through its ruling on the Civ.R. 60(B) motion. Sandra's assignment of error lacks merit.
Based on the foregoing analysis, the assignment of error raised by Francis Mekker in 98-P-0006 is not well-taken; accordingly, the January 31, 1998 judgment of the trial court is affirmed. The assignment of error set forth by Sandra Mekker in 98-P-0100 is also not well-taken; accordingly, the August 31, 1998 judgment of the trial court is affirmed. Finally, the appeal in 98-P-0007 is hereby dismissed sua sponte for being untimely pursuant to App.R. 4 and for lack of a final appealable order.
NADER, J., O'NEILL, J., concur.
[1] This case is a consolidation of three different appeals. In two of those appeals, Francis Mekker is the appellant, while Sandra Mekker is the appellant in the remaining appeal. Thus, each party is both an appellant and an appellee. For the sake of clarity, we will simply refer to the parties as Francis and Sandra.
[2] In actuality, the trial court ordered Sandra to pay $427 in monthly rent, not $400 as suggested by Sandra's assignment of error.